JOURNAL ENTRY AND OPINION.
{¶ 1} Defendant-appellant Calvin Dorton appeals his conviction in the Lakewood Municipal Court for interference with child custody. For the following reasons, we affirm the decision of the trial court.
 {¶ 2} This case arose from allegations that defendant, a 49-year-old man, took M.D., an 11-year-old boy, to an amusement park without the permission of his parents on June 16, 2001.
 {¶ 3} On June 17, 2001, defendant was charged with one count of interference with custody, in violation of R.C. 2919.23, one count of contributing to the delinquency of a minor, in violation of R.C. 2919.24, and one count of child enticement, in violation of R.C. 2905.05. On October 24, 2001, the trial began.
 {¶ 4} At trial, M.D. testified that he was 11 years old at the time of the incident. He testified that on the afternoon of June 16, 2001, he got into an argument with his mother and rode his bike over to the defendant's house at 1479 Maile Avenue in Lakewood, Ohio. He testified that he called his mother from the defendant's house and told her that he was at a friend's house and was going to spend the night. He did not tell his mother who the friend was. He testified that at around 5:00 p.m., defendant took him and three other juveniles to Good Times, an amusement park outside of Lakewood. He testified that the Lakewood Police pulled defendant's car over that evening as they were returning from Good Times and that his brother took him home. Finally, M.D. testified that he never told defendant that he had his parent's permission and that defendant never asked.
 {¶ 5} In addition to M.D., the State called Asthma Dayem, M.D.'s mother. She testified that her son telephoned her from the defendant's house and told her that he was spending the night. She testified that she did not know who the defendant was and that she thought her son's "friend" was someone his own age. She testified that she used her caller I.D. to call the defendant's house and left a message on the answering machine. She testified that she called the Lakewood Police after she had not heard from her son by 10:00 p.m. She testified that she was very worried and thought that something terrible had happened to him. Finally, she testified that she did not give the defendant permission to take her son to the amusement park and that defendant did not request her permission.
 {¶ 6} The State called Majid Dayem, M.D.'s father. He testified that he was very worried about his son's disappearance and drove around the neighborhood looking for him for several hours before calling the Lakewood Police. He testified that he did not know who the defendant was prior to the evening of June 16, 2001. He also testified that he had not given the defendant permission to take his son to the amusement park that evening.
 {¶ 7} The State called Patrolman Marcus Adkins of the Lakewood Police Department. He testified that on the evening of June 16, 2001, at approximately 10:00 p.m., he met with M.D.'s parents after they filed a missing child report. He obtained the address of the defendant based upon the mother's knowledge of the phone number. He testified that he canvassed the neighborhood and found M.D.'s bicycle on the defendant's front yard. He stated that the parents became very upset and worried when he told them that he had found their son's bike.
 {¶ 8} The State called Patrolman John Coney of the Lakewood Police Department. He testified that he went to the defendant's house on June 17, 2001 after receiving a call that juveniles were inside the house while the defendant was not home. He testified that when he arrived at the defendant's home, there were two young boys inside. He testified that the house was messy, unsanitary, and smelled like urine and feces. Finally, he testified that one of the juveniles had a key to the house and that he found extra keys in the mailbox.
 {¶ 9} The State also called Detective James Sacco of the Lakewood Police Department. He testified that he was assigned to the case after the parents reported their son missing. He testified that he was familiar with the defendant because the Lakewood Police Department had received other reports of children being at his house. Finally, he testified that he responded to the scene where the defendant's van had been stopped and that M.D. told him that he did not have his mother's permission to go to the amusement park with the defendant.
 {¶ 10} Finally, the State called Detective Donald Lissner of the Lakewood Police Department. He testified that he stopped the defendant's van at 12:05 a.m. on June 17, 2001. He testified that there were four juveniles inside the van and that defendant told him that they were his friend's children. He testified that he spoke with M.D. and his parents and learned that they had never heard of the defendant.
 {¶ 11} The defense presented three witnesses: Raymond Edgehouse, Barbara Jo Edgehouse and Rosemary Edgar. Raymond, an 11-year-old boy, testified that he had known the defendant for three years. He testified that he went to the amusement park with the defendant and three other children, including M.D., on June 16, 2001, with his parents permission. He testified that defendant paid for all of the children to get into the park. He testified that he did not know if M.D. received permission from his parents to go the amusement park with defendant. On cross-examination, he testified that he was at the defendant's house on June 17, 2001 when Patrolman Coney came to the house. He stated that defendant had given him a key to his house.
 {¶ 12} Next, Barbara Jo Edgehouse, Raymond's mother, testified. She testified that she had known the defendant for nearly three years. She testified that she allowed her son to spend time with the defendant, including spending the night at his house. She testified that she considered the defendant to be a positive influence in her son's life. She testified that the defendant used to babysit her son after school while she worked. On cross-examination, she testified that her son was at the defendant's house on June 17, 2001 to feed the defendant's dog. She also stated that she had heard the defendant tell the neighborhood children that they should not be at his house when he was not home.
 {¶ 13} Finally, Rosemary Edgar testified. She testified that she gave her 11-year-old son, Lucas, permission to go to the amusement park with the defendant on June 16, 2001. She testified that she had known the defendant for nearly ten years. On cross-examination, she testified that her son went to the defendant's home on a regular basis. She testified that her son did not have a key to the defendant's house and that he was not allowed to be at the defendant's home if the defendant was not home.
 {¶ 14} On October 26, 2001, the jury found defendant guilty of interference with child custody, as charged in count one of the indictment, and not guilty of the two remaining counts.
 {¶ 15} On February 15, 2002, the defendant was sentenced to six months in jail, suspended, and a $1,000 fine, $500 suspended. The court also sentenced defendant to five years standard probation with the following additional three conditions: (1) obtain a sex offender evaluation, (2) have no contact with M.D. or his family, and (3) have no unsupervised contact with any person under the age of 18.
 {¶ 16} Defendant appeals the verdict and sentence and raises six assignments of error. We will address defendant's assignments of error in the order asserted and together where it is appropriate for discussion.
 {¶ 17} "I. The trial court abused its discretion by imposing a condition on appellant's probation prohibiting him from having unsupervised contact with any person under eighteen years old.
 {¶ 18} "II. The trial court abused its discretion by imposing a condition of probation requiring appellant to obtain a sex offender assessment."
 {¶ 19} In his first and second assignments of error, defendant challenges two of the trial court's conditions of probation as being unreasonable and overly broad. We disagree.
 {¶ 20} Pursuant to R.C. 2951.02, a trial court is granted broad discretion in setting conditions of probation. Indeed, pursuant to R.C.2951.02(c), the trial court may impose additional terms of probation "in the interests of doing justice, rehabilitating the offender, and insuring his good behavior." Any such additional conditions cannot be overly broad so as to unnecessarily impinge upon the probationer's liberty. State v.Maynard (1988), 47 Ohio App.3d 76; State v. Livingston (1976),53 Ohio App.2d 195, 196-197; Lakewood v. Davies (1987), 35 Ohio App.3d 107.
 {¶ 21} In determining whether a condition of probation is related to the "interests of doing justice, rehabilitating the offender, and insuring his good behavior," courts should consider whether the condition (1) is reasonably related to rehabilitating the offender, (2) has some relationship to the crime of which the offender was convicted, and (3) relates to conduct which is criminal or reasonably related to future criminality and serves the statutory ends of probation. State v. Jones
(1990), 49 Ohio St.3d 51, 53.
 {¶ 22} Here, defendant was convicted of one count of interference with child custody after he took an 11-year-old boy to an amusement park without his parents permission. Defendant argues that the condition of his probation that restricts his contact with persons under the age of 18 years is too broad and violates his rights to privacy and to pursue an occupation since he is a respiratory therapist and works with children. We disagree.
 {¶ 23} First of all, defendant is not, as he asserts, prohibited from having any contact with minors. Rather, he is prohibited from having unsupervised contact with minors. As such, we find this condition of probation is reasonably related to the goal of rehabilitation and is not unduly restrictive. Evidence adduced at trial demonstrated that defendant entertains young children at his home and away from his home on a regular basis and often allows the children to stay at his home unsupervised. Defendant also admits that he did not receive the permission of M.D.'s parents to take him to the amusement park. Thus, the condition imposed has a direct relationship to the crime of which defendant is convicted and forbids conduct that is reasonably related to the prevention of future criminality on defendant's part. See State v. Jones, supra at 53.
 {¶ 24} In addition, there is no evidence that defendant's occupation will be affected by this term of probation since the condition is clearly geared toward the defendant's practice of having young children in his home, unsupervised, and taking young children out to events, without other parental or other adult supervision. Literal enforcement of any condition of probation, including the instant one, could be found to be unreasonable under some suggested fact patterns. Indeed, in State v. Jones, supra, the Ohio Supreme Court specifically held that contact with minors in normal work settings would normally not be considered a violation of a condition of probation similar to the condition imposed in this case. Id. at 55.
 {¶ 25} Next, defendant, relying on State v. Johnny Y (Aug. 25, 2000), Erie App. No. E-99-079, argues that the condition of his probation that orders him to obtain a sex offender assessment bears no relationship to the offense of which he was convicted. We disagree. In Johnny Y, the court found that the provision ordering appellant to participate in a sexual offender's program bore no relationship to the offense for which he was convicted. Here, unlike the appellant in Johnny Y, defendant was not ordered into a sexual offender program. Rather, he was ordered to obtain a sex offender evaluation. We do not find such a condition to be unduly intrusive. Moreover, this condition is reasonably related to the goal of rehabilitation. As previously noted, defendant regularly entertains young children in and away from his home and allows them to stay overnight. Although there were no sexual allegations in this case, defendant himself introduced two letters from neighborhood children stating that he had never made sexual advances toward them. Clearly, there were sexual innuendos inherent in this case and it was within the trial court's discretion to determine that a middle-aged male who surrounds himself with young children could be in need of further assessment by the court. Accordingly, this condition is reasonably related to the prevention of future criminality on defendant's part. SeeState v. Jones, supra at 53.
 {¶ 26} Defendant's first and second assignments of error are overruled.
 {¶ 27} "III. Appellant's conviction of interference with child custody was not supported by sufficient evidence.
 {¶ 28} "IV. Appellant's conviction of interference with child custody was against the manifest weight of the evidence."
 {¶ 29} In his third and fourth assignments of error, defendant challenges the adequacy of the evidence presented at trial. Specifically, defendant claims that the State failed to present sufficient evidence to support his conviction and that his conviction is against the manifest weight of the evidence. We disagree and find that an evaluation of the weight of the evidence is dispositive of both issues in this case.
 {¶ 30} The sufficiency of the evidence produced by the State and weight of the evidence adduced at trial are legally distinct issues.State v. Thompkins (1997), 78 Ohio St.3d 380, 386. When reviewing the sufficiency of the evidence, an appellate court's function is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Id.
 {¶ 31} While the test for sufficiency requires a determination of whether the State has met its burden of production at trial, a manifest weight challenge questions whether the State has met its burden of persuasion. Id. at 390. When a defendant asserts that his conviction is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. State v. Otten (1986),33 Ohio App.3d 339, 340.
 {¶ 32} Because sufficiency is required to take a case to the jury, a finding that a conviction is supported by the weight of the evidence must necessarily include a finding of sufficiency. Thus, a determination that a conviction is supported by the weight of the evidence will also be dispositive of the issue of sufficiency. State v.Roberts (Sept. 17, 1997) Lorain App. No. 96CA006462 at 4.
 {¶ 33} Here, defendant was convicted of interference with custody. The offense of interference with custody is defined by R.C.2919.23, which provides that no person shall recklessly or knowingly and without privilege take, keep or harbor a person who is a child under the age of 18 from a parent.
 {¶ 34} At trial, M.D., an 11-year-old child, testified that defendant took him to an amusement park located outside the City of Lakewood without the permission of his parents. M.D. also testified that the defendant made no effort to get his parent's permission or contact them in any way. M.D.'s parents testified that they were worried about the safety of their son and filed a missing child report with the Lakewood Police Department. They testified that M.D. did not have their permission to go to the amusement park and that defendant had not attempted to obtain such permission before taking him to the park. Indeed, both parents testified that they did not even know who the defendant was prior to that evening. Officer Sacco of the Lakewood Police Department testified that M.D. told him that he had spoken with his parents, but admitted that he did not have their permission to go to the park with the defendant.
 {¶ 35} Defendant argues that the evidence does not support his conviction because he did not take, keep or harbor M.D. from his parents. While he admits that he allowed M.D. into his home, took him to the amusement park, and did not call his parents to request permission, he claims that he thought that M.D. had received permission from his mother to go to the park.
 {¶ 36} Upon careful review of the testimony and evidence presented at trial, we hold that the jury did not act contrary to the manifest weight of the evidence in convicting defendant of interference with custody. Consequently, we conclude that defendant's assertion that the State did not produce sufficient evidence to support a conviction, therefore, is also without merit. Accordingly, defendant's third and fourth assignments of error are overruled.
 {¶ 37} "V. The trial court violated appellant's Sixth Amendment right to a fair trial by admitting other act evidence whose probative value was far outweighed by its prejudicial impact."
 {¶ 38} In his fifth assignment of error, defendant argues that he was unfairly prejudiced when the trial court made erroneous evidentiary rulings. Specifically, defendant argues that the trial court should not have permitted the State to question witnesses regarding issues and events which did not take place on June 16, 2001. We disagree.
 {¶ 39} In a criminal case where the defendant alleges that it was prejudicial error to allow the jury to hear certain testimony, the reviewing court must first determine if it was error to allow the jury to hear the testimony and, if so, whether such error was prejudicial or harmless. State v. Davis (1975), 44 Ohio App.2d 335.
 {¶ 40} First, we find no prejudicial error in the admission of Patrolman Coney's testimony that defendant's house on June 17, 2001 was messy and unsanitary or that neighborhood children had keys to defendant's house. Patrolman Coney's presence at defendant's house on June 17, 2001 was in response to a call placed to the Lakewood Police Department. His testimony merely shows his observation of the condition of defendant's home on the day he entered it and what he learned from the two children who were inside the defendant's house while the defendant was not there. Indeed, Raymond Edgehouse, a defense witness, also testified that he had a key to the defendant's house. Accordingly, there was no error in allowing the jury to hear the testimony.
 {¶ 41} Next, defendant complains of the testimony of Detective Sacco who testified that he was familiar with the defendant because the Lakewood Police Department had received reports of children being at his house. Evid. R. 404(B) prohibits the introduction of evidence of other acts to prove the character of a person in order to show that he acted in conformity therewith. However, Detective Sacco's testimony does not reveal an "other act" of defendant to show that he acted in conformity therewith. It merely shows why Detective Sacco was familiar with the defendant's address. Thus, there was no error in allowing the jury to hear this testimony.
 {¶ 42} Finally, defendant argues that he was unfairly prejudiced when the State questioned defense witness Barbara Jo Edgehouse about her knowledge of his natural children and an incident involving the Lakewood Police that occurred at his house on June 25, 2001. The defendant fails to show any prejudice arising from this line of questioning. Moreover, a review of the record reveals that, after a side-bar conference, the prosecutor stopped his inquiry concerning this incident.
 {¶ 43} Defendant's fifth assignment of error is overruled.
 {¶ 44} "VI. Appellant was denied his Sixth Amendment right to effective assistance of counsel."
 {¶ 45} In his sixth assignment of error, defendant argues that his trial counsel was deficient in various respects and that he was denied his constitutional right to the effective assistance of counsel. We disagree.
 {¶ 46} In order for this Court to reverse a conviction on the grounds of ineffective assistance of counsel, we must find that (1) counsel's performance was deficient and (2) that the deficient performance prejudiced the defense so as to deprive the defendant of a fair trial. Strickland v. Washington (1984), 466 U.S. 668, 687. Counsel's performance is deficient if it falls below an objective standard of reasonable representation. State v. Bradley (1989), 42 Ohio St.3d 136, paragraph two of the syllabus. To establish prejudice, "the defendant must prove that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different." Id. at paragraph three of the syllabus. Strategic or tactical decisions made by defense counsel which are well within the range of professionally reasonable judgment need not be analyzed by a reviewing court.Strickland, supra.
 {¶ 47} Defendant first argues that his trial counsel performed deficiently by failing to object to testimony regarding the events of the following day at defendant's house, about the condition of defendant's house, about keys left in the mailbox for neighborhood children, and about previous reports made against the defendant. We disagree. In the fifth assignment of error, the evidence of the other acts were held to be admissible. Since the evidence was properly admissible, counsel's failure to object was not prejudicial.[1] Thus, defendant was not rendered ineffective assistance of counsel. See Bradley, supra.
 {¶ 48} Next, defendant claims that he was prejudiced when his trial counsel failed to move for an acquittal of the interference with custody charge. Based upon our decision in the third and fourth assignments of error, defendant has not shown that such failure affected the outcome of the trial. Therefore, defendant was not denied effective assistance of counsel on that basis.
 {¶ 49} Defendant's sixth assignment of error is overruled.
Judgment affirmed.
ANN DYKE, P.J., CONCURS. DIANE KARPINSKI, J., CONCURS WITH SEPARATE CONCURRING OPINION. (See separate concurring opinion attached).
[1] Moreover, the record reveals that defendant's attorney did in fact make objections in the record to several of these questions.